# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL G. PUTNAM, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 17-764 |
| TEMPLE UNIVERSITY HEALTH SYSTEM, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                       **MARCH 26, 2018**

      Defendant Temple University Health System ("Temple") had four openings for interventional radiologists in early 2013. Plaintiff Samuel G. Putnam ("Dr. Putnam"), who was fifty-three years old at the time, was not hired for one of the positions, and he subsequently brought suit against Temple for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-963.

      Dr. Putnam voluntarily withdrew his PHRA claim. (*See* Doc. No. 26.) Temple now moves for summary judgment on the ADEA claim, contending that it had a legitimate, non-discriminatory reason for failing to hire Dr. Putnam as an interventional radiologist. For the reasons noted below, Temple's Motion for Summary Judgment is granted.

I. **BACKGROUND**

   A. **Factual History**

Dr. Putnam previously worked for Temple as an interventional radiologist from 1996 to 1999 and July 2000 to February 2001.[1] (Def.'s Mem. of Law Support Mot. Summ. J. 2.) During the latter timeframe he reported to Dr. Gary Cohen ("Dr. Cohen"), who was Temple's Section Chief of Interventional Radiology. (*Id.*) Dr. Putnam resigned from Temple in February 2001 to join Fornance Physician Services ("Fornance"), an organization through which he provided interventional radiology services to various hospitals that contracted with Fornance. (*Id.*)

In 2012, Temple acquired the American Oncologic Hospital (d/b/a The Hospital of the Fox Chase Cancer Center ("Fox Chase")), to which Fornance had been providing interventional radiology services at the time. (*Id.* at 2-3.) Following the acquisition of Fox Chase, Temple determined that it would staff Fox Chase with its own interventional radiologists, rather than subcontract those services to a provider such as Fornance. (*Id.* at 3.) As a result of the acquisition and work volume, Temple decided it would need to hire two interventional radiologists and subsequently started the recruitment process. (*Id.*) During the process two interventional radiologists resigned, resulting in four positions needing to be filled. (*Id.*) Dr. Putnam did not apply for any of the positions or reach out to anyone at Temple because he was still hopeful that Fornance would continue providing services at Fox Chase. (*Id.*, Ex. A at 81.)

Temple actively recruited and interviewed interventional radiologist candidates throughout the fall of 2012. (*Id.* at 3.) Between September and December 2012, Temple

---

[1] Dr. Putnam did not provide a separate facts section in his Memorandum of Law in Response to Temple's Motion for Summary Judgment. Accordingly, we will utilize Temple's Memorandum of Law in Support of its Motion for Summary Judgment in reciting the facts, and will construe all apparent genuine disputes of fact in favor of Dr. Putnam.

2

conducted initial interviews with Drs. Mark Burshteyn, David Pryluck, Joseph Panaro, and Emily Cuthbertson. (*Id.*)

In January 2013, Dr. Putnam contacted Dr. Cohen and asked to meet to discuss potential employment with Temple. (*Id.* at 4.) The two met at a Starbucks on January 19, 2013, during which Dr. Putnam explained his employment situation at Fornance. (*Id.*) Although Dr. Cohen left the meeting believing that Dr. Putnam was not interested in working at Temple, Dr. Putnam shortly after sent his cover letter and his curriculum vitae ("CV") to Dr. Charles Jungreis, Temple's Chairman of the Radiology Department. (*Id.*) Despite submitting his materials, however, Dr. Putnam was unable to work for Temple because he was subject to a restriction between Fornance and Fox Chase. (*Id.*) The restriction between the two entities was such that Fox Chase (by this time owned by Temple) could not directly hire any physician for a period of one year following the termination of the physician's employment with Fornance. (*Id.* at 4-5.)

On March 19, 2013, Fornance notified Dr. Putnam that his employment would be terminated effective July 17, 2013. (*Id.* at 5.) By letter dated March 25, 2013, Fornance advised Fox Chase that it was waiving its rights on a limited basis and would allow Fox Chase to solicit, recruit, or hire Dr. Putnam. (*Id.*) Dr. Putnam was similarly notified by letter dated March 27, 2013 that Fornance was waiving its rights and that Fox Chase could recruit and hire him. (*Id.*)

Dr. Putnam contacted Dr. Jungreis regarding employment at Temple after receiving notification about Fornance waiving its rights. (*Id.*) However, by that time Temple had already extended employment offers to Drs. Burshteyn, Pryluck, Panaro, and Cuthbertson. (*Id.*) Nevertheless, Temple offered to interview Dr. Putnam in the event there was a future opening, which he declined. (*Id.*)

### B. Procedural History

On February 16, 2017, Dr. Putnam filed a two-count Complaint against Temple under the ADEA (Count I) and PHRA (Count II). (*See* Compl.) Dr. Putnam alleged that Temple discriminated against him on the basis of his age in failing to hire him because Drs. Burshteyn, Pryluck, Panaro, and Cuthbertson were all younger candidates who were hired. (*Id.* ¶¶ 15-17.) Dr. Putnam withdrew his PHRA claim on January 17, 2018. (*See* Doc. No. 26.) Temple moves for summary judgment on the ADEA claim because it had a legitimate, non-discriminatory reason for not hiring Dr. Putnam because there were no open interventional radiologist positions at the time of his March 2013 application.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

## III. DISCUSSION

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). In the absence of direct evidence of age discrimination, courts utilize the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze claims of discrimination under the ADEA. *See Carter v. Mid-Atlantic Healthcare, LLC*, 228 F. Supp. 3d 495, 501 (E.D. Pa. 2017) (citing *Smith v. City of Allentown*, 589 F.3d 684, 690-92 (3d Cir. 2009)).

First, a plaintiff must establish a prima facie case of discrimination. *See id.* To do so in a claim of failure to hire under the ADEA, a plaintiff must prove that: "(1) he belonged to a protected class; (2) the defendant failed to hire him; (3) he was qualified for the position in question; and (4) circumstances giving rise to an inference of discrimination accompanied the

5

failure to hire him." *Landmesser v. Hazleton Area Sch. Dist.*, 574 F. App'x 188, 189 (3d Cir. 2014) (citing *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003)). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. *Carter*, 228 F. Supp. 3d at 501 (citing *Fasold v. Justice*, 409 F.3d 178, 185 n.10 (3d Cir. 2005)). If the employer offers a legitimate, non-discriminatory reason for its action, then "the plaintiff must show by a preponderance of the evidence that the defendant's explanation is actually a pretext for discrimination." *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 589 (E.D. Pa. 2013) (citing *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010)).

Here, Temple concedes Dr. Putnam's prima facie case of age discrimination and provides timing as its legitimate, non-discriminatory reason for failing to hire Dr. Putnam. (*See* Def.'s Mem. of Law Support Mot. Summ. J. 9.) Specifically, Temple argues that Dr. Putnam was simply too late in applying for an interventional radiologist position because Temple had already decided to hire Drs. Burshteyn, Pryluck, Panaro, and Cuthbertson. (*Id.* at 9-10.) Therefore, to avoid summary judgment, Dr. Putnam must meet his burden of showing that Temple's reason is a pretext for discrimination.

To make a showing of pretext, a plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). If the plaintiff's evidence "relates to the credibility of the employer's proffered justification," then it "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions

6

in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* (quoting *Fuentes*, 32 F.3d at 765).

Dr. Putnam makes the sole argument that Temple's justification must be false because he applied for the position in January 2013 after meeting with Dr. Cohen at Starbucks. (*See* Pl.'s Mem. of Law in Opp'n Def.'s Mot. Summ. J. 5-13.) Thus, he argues that summary judgment must be denied because there were open positions at Temple during the time of January 2013.

We initially note that Dr. Putnam is correct that there were open interventional radiologist positions at Temple in January 2013. And while it is true that Dr. Putnam sent his cover letter and CV to Dr. Jungreis following his meeting with Dr. Cohen, and that Julie Brissett ("Ms. Brissett"), Temple's Assistant Director of the Department of Physician and Faculty Recruitment and Retention, testified that the cover letter and CV counted as a formal application, (*see* Pl.'s Mem. of Law in Opp'n Def.'s Mot. Summ. J., Ex. 3 at 42), the Court finds several problems with Dr. Putnam's argument. First, Dr. Putnam stated in his sworn Charge of Discrimination to the EEOC that he "applied for a position in the Department of Radiology at Temple University Health System (TUHS)" in March 2013. (Def.'s Mem. of Law Support Mot. Summ. J., Ex. J.) Indeed, he even testified at his deposition that he did not view his meeting with Dr. Cohen at Starbucks as an interview.[2] (*Id.*, Ex. D at 30.)

Second, and what proves to be fatal to his argument, is the fact that Temple was restricted from hiring Dr. Putnam until Fornance notified Fox Chase in March 2013 that it was waiving its rights and allowing Fox Chase to recruit and hire Dr. Putnam. Fornance did not notify Fox Chase and Dr. Putnam of its waiver until it sent letters to each dated March 25 and March 27,

---

[2] This deposition testimony was taken from the matter of *Ball v. Albert Einstein Healthcare Network*, Court of Common Pleas of Philadelphia County, No. 141202354, in which Dr. Putnam and another Fornance physician, Dr. David S. Ball, alleged that Fornance's failure to waive the employment restriction with Fox Chase at an earlier time made it difficult for them to find employment.

7

2013, respectively. Dr. Putnam even admitted during his deposition that at the time he received his March 19, 2013 termination letter from Fornance, Temple or Fox Chase "couldn't make an offer. They weren't released. They could not make me an offer." (*Id.*, Ex. D at 253-55.) Thus, Ms. Brissett testifying that Dr. Putnam's cover letter and CV in January 2013 constituted a formal application is irrelevant because Temple could not hire him at the time due to the restriction between Fornance and Fox Chase. The undisputed evidence shows that Temple had already moved forward with the hiring process of the other four candidates by the time Fornance waived its rights. Therefore, Dr. Putnam has failed to show by a preponderance of the evidence that Temple's legitimate, non-discriminatory reason was pretextual. Accordingly, Temple is entitled to summary judgment on his claim of age discrimination.

## IV. CONCLUSION

For the reasons set forth above, Temple's Motion for Summary Judgment is granted.

An appropriate Order follows.